IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRAD MILLER, Individually, and <br> BRAD MILLER d/b/a/ FILM-TECH, <br><br> Plaintiffs, <br><br> v. <br><br> KYLE MCEACHERN, <br><br> Defendant. | § § § § § § § § § § § § | CIVIL ACTION NO. 3-07-CV-1997-M |

## MEMORANDUM OPINION AND ORDER DENYING REMAND

Before the Court is Plaintiff's Motion to Remand. For the reasons described below, the Motion is **DENIED**.

### BACKGROUND

Plaintiff Brad Miller alleges that he and Defendant Kyle McEachern formed a partnership by oral agreement in April 2005, for the purpose of developing, operating, and selling certain software, called the ShoWizard Pro. Miller claims he recently applied for a patent on ShoWizard Pro, listing McEachern as a co-inventor. Miller asserts claims against McEachern for breach of loyalty and breach of the duty of care, based on McEachern's alleged secret communications with Radiant Systems ("Radiant"), a potential purchaser of ShoWizard Pro. Miller seeks an accounting of the alleged partnership's assets, profits, and losses, and seeks an injunction barring McEachern from selling or destroying ShoWizard Pro.

Plaintiff also asserts fraud and wrongful conversion claims arising from a separate agreement between McEachern and Film-Tech, Miller's sole proprietorship. The Complaint alleges that Miller, d/b/a/ Film-Tech, hired McEachern as a "contract laborer"

to produce a scheduling program for Film-Tech projectionists, and that McEachern deliberately designed the program to function only on his websites rather than on the Film-Tech website. Film-Tech seeks an unspecified amount of damages for its loss of goodwill and reputation in the film industry, as well as $5,000, paid to McEachern to develop the program.

This suit was removed from the 382nd Judicial District Court on November 29, 2007. Miller and McEachern are citizens of Texas and Nevada, respectively.

## ANALYSIS

Defendant asserts that removal was proper under diversity and federal question jurisdiction. Finding diversity jurisdiction proper, the Court does not analyze federal question jurisdiction.

Diversity jurisdiction exists under 28 U.S.C. § 1332 when the parties are citizens of different states, and the amount in controversy exceeds $75,000.[1] The party seeking to invoke federal diversity jurisdiction bears the burden of establishing by a preponderance of the evidence that complete diversity exists, and that the jurisdictional amount is satisfied.[2] Here, complete diversity between Plaintiff and Defendant is undisputed. Plaintiff contends, however, that the citizenship of the general partnership allegedly created by Miller and McEachern is also relevant to determining whether federal jurisdiction exists. Plaintiff contends that the partnership destroys complete diversity, because the citizenship of a partnership is governed by the citizenship of each of its partners,[3] and Miller and McEachern are citizens of Texas and Nevada. Although

---

[1] 28 U.S.C. § 1332.
[2] *St. Paul Reinsurance Co. v. Greenberg,* 134 F.3d 1250, 1253 (5th Cir. 1998).
[3] *Newport, Ltd. v Sears, Roebuck & Co.*, 941 F.2d 302, 304 (5th Cir. 1991).

Plaintiff does not specify whether the partnership would be a necessary plaintiff or defendant in the suit, either scenario would destroy complete diversity.

As an initial matter, the Court notes that Plaintiff has not introduced any evidence that a partnership existed. The only relevant evidence on this issue is Defendant's affidavit of November 19, 2007, attached to the notice of removal. In his affidavit, Defendant states that he never agreed to form a partnership or to sell Miller the source code for his software. Thus, Plaintiff fails to establish that a partnership existed.

Plaintiff's argument also relies on a false premise. The citizenship of a partnership is only relevant to diversity jurisdiction when the partnership is a party to the litigation. Plaintiff presumes without explanation that the partnership is a party to the suit; however, only two parties are named in the Complaint— Plaintiff Miller, in his individual capacity and through his d/b/a, Film-Tech, and Defendant McEachern. The alleged partnership is not converted into a party to the litigation merely because its existence is potentially determinative of Plaintiff's substantive rights.

Even assuming, *arguendo*, that Plaintiff establishes at trial that a partnership between Plaintiff and Defendant existed, Plaintiff offers no reason why the partnership is, or would be, a necessary party to the litigation. To the contrary, under the Texas Revised Partnership Act, a partner may commence an action against another partner seeking legal or equitable relief, without joining the partnership as a party.[4] Thus, the Court concludes that the existence or non-existence of the alleged partnership does not affect diversity jurisdiction in this case.

Whether the jurisdictional minimum is met is the next issue. A removing party may establish the jurisdictional minimum by either: (1) demonstrating that it is "facially

---

[4] *See* Tex. Rev. Civ. Stat. Ann. Art. 6132b-4.06(b).

apparent" from the petition that the claim likely exceeds $75,000 or (2) setting forth *the facts* in controversy that support a finding of the requisite amount.[5] Unless it is apparent from the petition that the amount in controversy exceeds $75,000, the defendant may not rely on mere conclusory allegations in the notice of removal to satisfy its burden.[6] Rather, the defendant has an affirmative burden to produce information, through factual allegations or an affidavit, that is sufficient to demonstrate the requisite jurisdictional amount. The jurisdictional facts that support removal must be judged at the time of the removal.[7] While post-removal affidavits may be considered in determining the amount in controversy at the time of removal, such affidavits may be considered only if at the time of removal the basis for jurisdiction is ambiguous.[8]

In an action for injunctive relief, the amount in controversy is "the value of the right to be protected or the extent of the injury to be prevented."[9] The Court makes the amount in controversy determination from the perspective of the plaintiff; the proper measure is the benefit or value to the plaintiff, not the cost to the defendant.[10]

Here, Plaintiff requests the following damages: (1) a temporary and a permanent injunction barring Defendant from selling or destroying the ShoWizard Pro software; (2) an accounting and division of partnership profits and assets; (3) damages flowing from Defendant's fraud and wrongful conversion of the ShoWizard Pro software; (4) damages flowing from Plaintiff's loss of reputation and goodwill in the industry; (5) $5,000 in costs paid to Defendant for development of the projectionist program; and (6) attorney's

---

[5] *Grant v. Chevron Phillips Chemical Co.*, 309 F.3d 864, 868 (5th Cir. 2002).
[6] *See Felton v. Greyhound Lines, Inc.,* 324 F.3d 771, 774 (5th Cir. 2003).
[7] *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000).
[8] *Id.*
[9] *Hartford Insurance Group v. Lou-Con Inc.,* 293 F.3d 908, 910 (5th Cir. 2002).
[10] *See Webb v. Investacorp, Inc.,* 89 F.3d 252, 257 n.1 (5th Cir. 1996).

fees. Pursuant to Rule 47 of the Texas Rules of Civil Procedure, the original Complaint in state court did not specify the amount of unliquidated damages sought.

To determine whether damages in excess of $75,000 are shown, the Court principally focuses on the value of the ShoWizard Pro software, the sole identified asset of the alleged partnership. Two pieces of evidence are relevant to the valuation of ShoWizard Pro: Defendant's affidavit of January 25, 2008, and Plaintiff's application for a patent on the software.

Defendant's affidavit recounts his meeting with Radiant representatives, and his subsequent discussion with Miller and Miller's employee, Jeremy Spracklen:

> On October 18, 2007 I [Defendant] met with representatives of Radiant Systems to discuss the possible licensing of my movie scheduling software system to Radiant. Later that afternoon after my meeting with Radiant, I met with the plaintiff, Brad Miller and his employee Jeremy Spracklen. At this second meeting, the plaintiff and I discussed what I should charge Radiant to license my software annually. In front of Mr. Spracklen, Mr. Miller stated that I should charge Radiant $180,000 per year for this single, 600 theatre movie client.

Based on Miller's recommendation for an offer to Radiant, Defendant extrapolates an aggregate, annual market value of $750,000 for the software, assuming all 3,000 theatres in the U.S. purchased ShoWizard Pro licenses. Miller's recommendation—$180,000 for 600 theatres— yields an average, annual licensing fee of $300 per theatre. Multiplying this amount by 3,000—the number of theatres nationwide—would result in $900,000, not $750,000, in annual licensing fees.

No evidence is before the Court indicating any likelihood that all 3,000 theatres in the U.S. would purchase ShoWizard Pro. Hence, Defendant's license fee prediction,

premised on ShoWizard's complete saturation of the market, is too speculative to satisfy the jurisdictional amount.

Although Defendant has presented no evidence that Plaintiff would be able to sell ShoWizard Pro to every theatre operator in the U.S., the meeting between Defendant and Radiant reflects real market demand for the product. Because the relevant issue is not the likelihood of Defendant's successful sale of the software to Radiant, but rather whether substantial market interest in the software existed, enabling its valuation, the acquisition meeting is crucial evidence. Defendant's affidavit not only evidences general market demand for ShoWizard Pro but also suggests the software's approximate market value. Miller advised Defendant to license the software to Radiant for $180,000 per year. Although Miller recommended $180,000 as an initial offer price, this sum serves as a reasonable benchmark of ShoWizard's value. Miller's advised price is particularly reliable because of his experience in the relevant market: Miller claims that he has been a co-owner of a partnership business dedicated to developing and selling the software since 2005, that he founded and has managed Film-Tech, a film company, for nearly a decade, and that he "enjoys a sterling reputation in the film industry." Plaintiff's efforts to patent ShoWizard Pro further underscore the software's commercial potential. Thus, these facts suggest that licensing ShoWizard Pro to Radiant and other theatres could plausibly generate $180,000 in annual revenues for the alleged partnership, or $90,000 per partner. Thus, Defendant has established by a preponderance of the evidence that a permanent injunction preventing McEachern from licensing the software to theatre operators could be worth more than $75,000 to Miller. Defendant, therefore, has satisfied the

jurisdictional minimum, without additional analysis of Plaintiff's breach of loyalty, breach of the duty of care, fraud, and wrongful conversion claims.

## CONCLUSION

Since diversity jurisdiction proper, Plaintiff's Motion to Remand is **DENIED**.

**SO ORDERED**.

February 15, 2008.

*[Signature]*

**BARBARA M.G. LYNN**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**