**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| BRAD MILLER, Individually, and | § | |
| d/b/a/ FILM-TECH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. |
| v. | § | 3:07-CV-1997-M |
| | § | |
| KYLE MCEACHERN, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion to Dismiss for Lack of Personal Jurisdiction,

Motion for a More Definite Statement, Motion to Dismiss for Failure to State a Claim, and

Request for Conversion to Summary Judgment [Docket Entry #3].  The Court **DENIES**

Defendant's Motion to Dismiss for Lack of Personal Jurisdiction.  The Court **DENIES**

Defendant's Motion for a More Definite Statement and **DENIES AS MOOT** Defendant's

Motion to Dismiss for Failure to State a Claim.  The Court **DENIES** Defendant's Request for

Conversion to Summary Judgment.

## I.  FACTUAL BACKGROUND

Plaintiff Miller resides in Texas, where he has owned and operated Film-Tech, a sole

proprietorship specializing in software development for the film industry, for approximately

eight years.  Miller alleges that he and Defendant McEachern formed a partnership by oral

agreement in April 2005, to develop and sell a software program called ShoWizard Pro.  The

agreement allegedly provided that the pair would share profits equally, and that Miller would

lend McEachern money to finance the project.  The Affidavits of Miller and Jeremy Spracklen,

which were submitted by Plaintiff in his Response to Defendant's Motion to Dismiss, state that the pair provided McEachern with money to help McEachern work on the project.

According to Miller's pleadings, McEachern traveled to Texas twice to work on ShoWizard Pro, once in June 2007 and again in October 2007. During his first trip, McEachern discussed marketing and development issues with Spracklen. After returning to Nevada, McEachern continued working on ShoWizard Pro and regularly communicated with Miller and Spracklen. The three planned to unveil ShoWizard Pro at the ShowEast trade show ("ShowEast") in October 2007 in Orlando, Florida. However, as ShowEast approached, McEachern indicated that he was too distracted to complete ShoWizard Pro. Consequently, Miller paid for McEachern to again travel to Texas to complete the software. The trip allowed ShoWizard Pro to be completed in time for ShowEast.

Miller, McEachern, and Spracklen unveiled ShoWizard Pro at ShowEast in October 2007. The three agreed that McEachern would serve as the primary contact for potential purchasers with technical questions about the software. However, Miller claims that McEachern engaged in secret negotiations with a prospective purchaser about the sale of ShoWizard Pro. Following ShowEast, McEachern allegedly returned to Las Vegas and "dropped off the radar," failing to return multiple phone calls and e-mails from Miller and Spracklen. When McEachern finally did respond, he stated that he had been unavailable due to a death in the family. Miller has had no further contact with McEachern.

Miller claims that McEachern, as a co-partner, owed him a duty of loyalty and a duty of care, which McEachern breached by secretly negotiating with the prospective purchaser and refusing to return Miller's phone calls and e-mails. With regard to his ShoWizard Pro claim,

Miller seeks damages, an accounting of the partnership profits, and an injunction preventing McEachern from destroying or selling ShoWizard Pro.

Miller also asserts various claims relating to the alleged conversion of a separate program called SMG Projectionist. Miller claims that he hired McEachern to develop the code for SMG Projectionist, and that McEachern finished the program and placed it on Film-Tech's website. Miller further alleges that McEachern has since disabled Miller's access to the program, and that McEachern is now attempting to copyright and sell the SMG Projectionist software under his own name.

## II. PERSONAL JURISDICTION

### A. Legal Standard

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if the long-arm statute of the forum state confers personal jurisdiction over that defendant and the exercise of such jurisdiction by the forum state is consistent with due process.[1] The Texas long arm statute reaches to the limits of due process; the court therefore need only determine whether the exercise of personal jurisdiction over the defendant is consistent with due process.[2] The Due Process clause permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play

---

[1] *Latshaw v. Johnston,* 167 F.3d 208, 211 (5th Cir.1999); *Electrosource, Inc. v. Horizon Battery Technologies,* Ltd., 176 F.3d 867, 871 (5th Cir.1999) (citing *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex. 1990)).
[2] *Guardian Royal Exch. v. English China Clays P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991).

and substantial justice."[3]  The nonresident's contacts must be sufficient for the nonresident to have reasonably expected to be haled into court in the forum state.[4]

There are two categories of personal jurisdiction, general and specific.  General jurisdiction exists when a defendant's contacts with the forum state are "continuous and systematic," allowing the Court to exercise jurisdiction over that Defendant for causes of action unrelated to the Defendant's connections to the state.[5]  For specific jurisdiction to exist, the defendant's contacts must be purposefully directed at the forum and the plaintiff's claim must arise out of or be related to those contacts.[6]  The Texas long arm statute explicitly authorizes personal jurisdiction over a party who "commits a tort in whole or in part in this state."[7]

Once the plaintiff has established minimum contacts, the burden shifts to the defendant to demonstrate that the exercise of jurisdiction would be unfair.[8]  The court then determines whether the assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice."[9]

Where a motion to dismiss is decided without an evidentiary hearing, uncontroverted allegations in the complaint are accepted as true, and factual conflicts are resolved in favor of the Plaintiff.[10]  The presentation of a *prima facie* case for personal jurisdiction will thus satisfy the plaintiff's burden.

---

[3] *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001).
[4] *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2002).
[5] *Mink v. AAA Development Corp.,* 190 F.3d 333, 336 (5th Cir. 1999); *See also Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n.9 (1984).
[6] *See Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985).
[7] TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (2) (Vernon 2008).
[8] *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999).
[9] *Latshaw,* 167 F.3d at 211 (quoting *International Shoe Co. v. Washington,* 326 U.S. 310 (1945)).
[10] *Central Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 380 (5th Cir. 2003).

### B. Partnership-Related Claims

Plaintiff's allegations regarding the alleged oral partnership are more than sufficient to establish specific personal jurisdiction over Defendant for the partnership claims. First, Defendant purposefully availed himself of the benefits and protections of Texas' laws. Defendant voluntarily entered into a Texas partnership with a Texas resident. In addition, Defendant traveled to Texas twice in order to work on ShoWizard Pro, thereby furthering partnership interests. The connections between Defendant and Texas are not merely random or fortuitous, but intentional.

Second, the assertion of jurisdiction arises out of Defendant's contacts with Texas. Plaintiff claims that Defendant has breached his duties of care and loyalty, duties that exist only because of Defendant's connections with Texas. Defendant's alleged partnership agreement with a Texas resident and work in furtherance of that partnership are exactly why Defendant is being sued. There is also no violation of fundamental fairness here. The Plaintiff came to Texas to perform his partnership duties, which are governed by Texas law. He should not be surprised that a later breach of those duties could bring him into a Texas court.

Because Defendant purposefully availed himself of Texas' laws, and because it was reasonably foreseeable that a suit for a breach of the partnership duties would be brought in Texas, the Court has personal jurisdiction over Defendant with respect to the partnership claims.

### C. Wrongful Conversion Claim

Defendant claims the Court lacks personal jurisdiction to decide Plaintiff's claims for the alleged conversion of the SMG Projectionist software. The Court disagrees. It is alleged in effect that Defendant, through the internet, entered Texas, where SMG Projectionist was housed,

and altered it, and that in so doing, Defendant purposefully directed tortious activity towards a Texas resident, making the exercise of jurisdiction appropriate for claims resulting from that tort.

It is well-established that when a nonresident defendant commits a tort within a state, the tort provides the basis for personal jurisdiction for claims arising out of that tort.[11]  It is also well-established that an out-of-state defendant's tort can provide the basis for the assertion of personal jurisdiction if the effects of the tort were "expressly aimed" at the forum and that the plaintiff would feel the "brunt of the harm" in that state.[12]

In this case, either theories exist.  If Defendant is properly thought of as entering Texas through the internet and committing a tort, that tort may be addressed by this Court.  Even if the Defendant's conduct was wholly outside of Texas, it still provides a basis for jurisdiction under the *Calder* "effects" test.  The tort was expressly aimed towards Texas, and Plaintiff, a Texan, felt the brunt of the harm.  A good analogy is a situation in which a computer hacker has interfered with business in another state.  In that case, as is true here, it is proper to bring a claim against that defendant in the state where the injury was felt.

There is also no unfairness in asserting personal jurisdiction here.  Defendant allegedly converted Texas property by actions either in or directed towards Texas.  It should be no surprise that a Texas Court would have the power to address that alleged wrong.

### III. MOTION FOR MORE DEFINITE STATEMENT

Defendant claims that the Plaintiff's pleadings are too vague to support his claims. Federal Rule of Civil Procedure 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," one that "give[s] the defendant fair notice of what .

---

[11] *Guidry v. United States Tobacco Co., Inc.*, 188 F.3d 619, 628 (5th Cir. 1999).
[12] *Calder v. Jones*, 465 U.S. 783, 788 (1984).

. . the claim is and the grounds upon which it rests."[13] While Defendant's Original Petition in State Court was sparse, Defendant had notice of what he was being sued on: an alleged oral partnership and the breach of duties resulting therefrom, and an alleged conversion of SMG Projectionist. The Plaintiff's allegations were further clarified in the Response to the Motion to Dismiss. The Court grants leave for the Plaintiff to amend his pleadings by **Tuesday**, **September 16** to incorporate the further detail provided in the Response to the Motion to Dismiss, but otherwise **DENIES** the Motion for a More Definite Statement.

### IV. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Defendant correctly alleged in his Motion to Dismiss that the Plaintiff's Amended Complaint does not satisfy the particularity requirements for a fraud claim in federal court. The Plaintiff agrees and has withdrawn the fraud claim, so Defendant's Motion is moot. As stated above, the Plaintiff's other claims have been sufficiently pleaded.

### V. CONVERSION TO SUMMARY JUDGMENT

#### A. Legal Standard

The Defendant also requests that the Court consider his Motion to Dismiss as a Motion for Summary Judgment. The Court declines this request. Summary judgment is warranted when the pleadings, affidavits, and other summary judgment evidence show that there is no genuine issue of material fact in dispute.[14] The Plaintiff alleges that he and Defendant were partners, the Defendant disputes that claim, and there is no comprehensive body of evidence conclusively pointing one way or the other.

Defendant also contends that the partnership claims are barred by the Texas Statute of Frauds. This issue has not been developed sufficiently to be resolved on a Motion to Dismiss. In

---

[13] *Bell Atlantic Corp v. Twombly*, 127 S.Ct. 1955, 1964 (2007).
[14] *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

relevant part, the Texas Statute of Frauds requires all contracts that cannot be performed within one year from its date to be in writing and signed by the parties obligated.[15] However, where "the time for performance of a contract is uncertain and performance of a contract can conceivably occur within one year, the statute of frauds does not apply."[16] The Court will consider further motions upon submission of further evidence. Defendant has not even purported to comply with the Local Rules for a summary judgment, and so the Court declines to convert his Motion to Dismiss to such.

## VI. CONCLUSION

For the reasons stated above, the Court **DENIES** the Motions made by Defendant.

**SO ORDERED**.

September 2, 2008.

BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS

---

[15] TEX. BUS. & COM. CODE ANN. § 26.01(b)(6) (Vernon 2005).
[16] *Leon Ltd. v. Albuquerque Commons Partnership*, 862 S.W.2d 693, 701 (Tex. App.-El Paso 1993, no writ).